ATLANTIC DEPARTMENT STORE, INC. ET AL. *v.*
STATE'S ATTORNEY FOR PRINCE
GEORGE'S COUNTY, MARYLAND

[No. 765, September Term, 1973.]

*Decided August 9, 1974.*

The cause was argued before MOYLAN and POWERS, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Benjamin R. Wolman,* with whom were *Barry T. Covington* and *Wolman, Fishman, Gushee, Shepherd & Covington* on the brief, for appellants.

*Alexander L. Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Charles B. Strong, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

The State's Attorney for Prince George's County filed two petitions for injunctive relief in the Circuit Court for Prince George's County, one against each of the two appellants here. The petitions were substantially identical. Each alleged that the respondent had violated Code, Art. 27, § 534H, by conducting retail business on a Sunday, having more than six persons on a shift. Upon motion, the court ordered that the cases be consolidated.

At a hearing before Judge James H. Taylor the parties

agreed to all of the essential facts; that each respondent was a corporation conducting a retail business in Prince George's County, that each did conduct business on Sunday, and that neither came within the exclusions or exemptions in § 534H. Each submitted evidence that among its employees were persons of various religious beliefs and persons who professed no religion. No employee was required by either corporation to work on any day in violation of his religious belief. At the lower court hearing the respondents relied solely upon a contention that the statute was unconstitutional.

The court entered an order granting the petition for an injunction commanding each respondent to cease and desist from violation of Art. 27, § 534H. This appeal was taken.

In this Court the appellants contend in four aspects that the statute is unconstitutional. They give these reasons why they think so:

1. It establishes the necessity for adherence to religion and thus prohibits the free exercise thereof, by taking a non-neutral role.

2. It places the burden of proof in a criminal proceeding upon the defendant.

3. It denies due process because it is arbitrarily indiscriminatory, and is vague.

4. By permitting applicability in certain cases to depend upon a person's religious conviction it inhibits the choice to do business as a corporation, since a corporation can have no religious conviction.

An analysis of the statute shows that it does these things:

A. Establishes (subsection a) one day of the week, specified as Sunday, upon which the conduct of wholesale or retail business for profit is generally prohibited.

B. Provides (subsection d) that it is not applicable to any person who by reason of his religious conviction observes a day other than

Sunday as his day of rest, and does actually observe that other day.

C. Excepts from the prohibition (subsection b) four specified types of retail establishment, apparently deemed to serve the public convenience, (subsection c) certain occupational classifications, i.e., farmers, nurserymen, and small business, and (subsection e) any establishment which offers service as its primary business.

D. Expressly permits on Sunday (subsection f) certain industrial operations, and (subsection g) all recreational activities, sports, and amusements.

E. Authorizes the State's Attorney (subsection i) to petition the court to enjoin any violation of the law.

F. Makes violation of the law a misdemeanor (subsection j), and authorizes the imposition of criminal penalties upon conviction.

## I and IV

The principal constitutional ground raised by appellants, expressed in their first and fourth contentions, is that the statute under which they were charged violates the First Amendment to the United States Constitution, because it is a "law respecting an establishment of religion, or prohibiting the free exercise thereof". A similar contention, arising under Art. 27, § 521, was fully discussed in *McGowan v. State of Maryland*, 366 U. S. 420, 81 S. Ct. 1101, 6 L.Ed.2d 393 (1961), affirming the decision of the Court of Appeals of Maryland in *McGowan v. State*, 220 Md. 117, 151 A. 2d 156 (1959). Mr. Chief Justice Warren said, for the Supreme Court, at 445:

"Sunday Closing Laws, like those before us, have become part and parcel of this great governmental concern wholly apart from their original purposes or connotations. The present purpose and effect of most of them is to provide a uniform day of rest for all citizens; the fact that this day is Sunday, a day

of particular significance for the dominant Christian sects, does not bar the State from achieving its secular goals. To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare rather than one of mere separation of church and State."

After noting numerous activities of a commercial nature permitted by § 521 and other applicable Maryland statutes, the Chief Justice said, at 448:

"These provisions, along with those which permit various sports and entertainments on Sunday, seem clearly to be fashioned for the purpose of providing a Sunday atmosphere of recreation, cheerfulness, repose and enjoyment. Coupled with the general proscription against other types of work, we believe that the air of the day is one of relaxation rather than one of religion."

Responding to the contention made in *McGowan* that the State's power to regulate conduct in the public interest may only be executed in a way that does not unduly or unnecessarily infringe upon the religious provisions of the First Amendment, the Supreme Court said, at 450-52:

"However, the State's purpose is not merely to provide a one-day-in-seven work stoppage. In addition to this, the State seeks to set one day apart from all others as a day of rest, repose, recreation and tranquility — a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which there exists relative quiet and disassociation from the everyday intensity of commercial activities, a day on which people may visit friends and relatives who are not available during working days.

"Obviously, a State is empowered to determine

that a rest-one-day-in-seven statute would not accomplish this purpose; that it would not provide for a general cessation of activity, a special atmosphere of tranquility, a day which all members of the family or friends and relatives might spend together. Furthermore, it seems plain that the problems involved in enforcing such a provision would be exceedingly more difficult than those in enforcing a common-day-of-rest provision.

"Moreover, it is common knowledge that the first day of the week has come to have special significance as a rest day in this country. People of all religions and people with no religion regard Sunday as a time for family activity, for visiting friends and relatives, for late sleeping, for passive and active entertainments, for dining out, and the like. * * * Sunday is a day apart from all others. The cause is irrelevant; the fact exists. It would seem unrealistic for enforcement purposes and perhaps detrimental to the general welfare to require a State to choose a common day of rest other than that which most persons would select of their own accord. For these reasons, we hold that the Maryland statutes are not laws respecting an establishment of religion."

Appellants argue that *McGowan* is no longer controlling, because of what the Supreme Court has said in other cases decided since 1961. They point to four decisions of that Court; *Murray v. Curlett,* (also reported as *School District of Abington Tp. Pa. v. Schempp*) 374 U. S. 203, 83 S. Ct. 1560, 10 L.Ed.2d 844 (1963); *Sherbert v. Verner,* 374 U. S. 398, 83 S. Ct. 1790, 10 L.Ed.2d 965 (1963); *Wisconsin v. Yoder,* 406 U. S. 205, 92 S. Ct. 1526, 32 L.Ed.2d 15 (1972); and *Committee For Public Ed. & Religious Lib. v. Nyquist,* 413 U. S. 756, 93 S. Ct. 2955, 37 L.Ed.2d 948 (1973). We have carefully examined each of those decisions, and we find nothing that in any way modifies the holding of the Supreme Court in *McGowan* "that the Maryland statutes are not laws respecting an establishment of religion".

In *Murray* the Supreme Court noted that it had said in *Cantwell v. Connecticut,* 310 U. S. 296, 60 S. Ct. 900, 84 L. Ed. 1213 (1940) that the First Amendment reference to religion has a double aspect. On the one hand, the Establishment Clause forestalls compulsion by law of any creed or the practice of any form of worship. On the other hand, the Free Exercise Clause safeguards the free exercise of the chosen form of religion. The Court noted also that it had said that the First Amendment requires the state to be a neutral in its relations with groups of religious believers and non-believers. Nor may a government establish a "religion of secularism", in the sense of affirmatively opposing or showing hostility to religion, thus preferring those who believe in no religion over those who do believe.

In short, the Supreme Court held in *Murray* that the state must be neutral, and that a regulation which required the daily reading of a passage from the Holy Bible in the public schools was in violation of the Establishment Clause.

In *Sherbert* the appellant was discharged from her employment in a textile mill in South Carolina because she would not work on Saturday, the Sabbath day of her religious faith. She was denied unemployment compensation benefits on the ground that she failed to accept available suitable work. The Supreme Court held that the law disqualifying her for benefits under those circumstances imposed a burden on the free exercise of appellant's religion.

The Court also held that there was no compelling state interest in the eligibility provisions of the unemployment compensation statute which justified the substantial infringement of appellant's First Amendment right. In doing so, the Court distinguished *Braunfeld v. Brown,* 366 U. S. 599, 81 S. Ct. 1144, 6 L.Ed.2d 563 (1961), decided at the same time as *McGowan,* which recognized a strong state interest in providing Sunday as one uniform day of rest for all workers; an interest strong enough to outweigh the burden recognized as falling upon Orthodox Jewish merchants who observed a different Sabbath.

*Wisconsin v. Yoder, supra,* grew out of the resistance by members of Amish churches in Wisconsin to a state statute

that required children to attend school until they reached the age of 16. The Supreme Court observed that the unchallenged testimony of acknowledged experts in education and religious history showed that enforcement of the law after the eighth grade would gravely endanger, if not destroy, the free exercise of respondents' religious beliefs.

Of the frequent conflict between state interest and the Free Exercise Clause, Mr. Chief Justice Burger, writing for the Court, said, at 215:

> "The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion. We can accept it as settled, therefore, that, however strong the State's interest in universal compulsory education, it is by no means absolute to the exclusion or subordination of all other interests."

The Court affirmed the Supreme Court of Wisconsin in holding that the state interest in compulsory education, strong as it was, did not justify the interference it caused with the free exercise of religion by the individuals in that case.

Most recently, in *Nyquist*, the Supreme Court considered the constitutionality of a New York law which provided financial assistance, in several ways, to non-public elementary and secondary schools. In an extended opinion written by Mr. Justice Powell, the Court reviewed and discussed many of its previous decisions involving the religious freedom clauses of the First Amendment. *McGowan* was cited several times with approval, and with no intimation that it was in any way derogated by later cases.

There is no need here for any more detailed discussion of *Nyquist* than to say that the Supreme Court held that each of the aid provisions in the New York statute had a primary effect that advances religion, and each offended the

constitutional prohibition against laws respecting the establishment of religion.

The foregoing review makes clear a major distinction between the two clauses of the First Amendment respecting religion. The Establishment Clause is an absolute prohibition, permitting no exception, however minor and however persuasive may be the reasons for it. It is not subject to the rule of majority. The Free Exercise Clause, on the other hand, is not absolute, and actions (but never beliefs) which may even be looked upon as duties of one's religious faith may be required to be accommodated to a compelling and legitimate state interest.

Of the Supreme Court decisions we have cited and discussed, *McGowan*, *Murray*, and *Nyquist* were "establishment" cases, although *McGowan* also involved "free exercise", and *Braunfeld*, decided with *McGowan*, was clearly a "free exercise" case. *Sherbert* and *Yoder* were "free exercise" cases.

In the case before us, appellants do not appear to rely directly upon the Establishment Clause, but say that § 534H compels not merely an arbitrary day of rest, but observation of a Sabbath. They say further that this intervention by the State in a purely religious issue inhibits pro-religious or non-religious activity. They do not say, however, how such intervention, if it is intervention, interferes with or restricts the free exercise of their religious conviction or lack of conviction.

We cannot agree that § 534H does what appellants say it does. That the State may impose a general restriction on Sunday business, and may provide for exceptions, was the clear and still vital holding of *McGowan*. That a state may prohibit absolutely the conduct of certain kinds of business on Sunday, even as to individuals who observe a different Sabbath, was held in *Braunfeld*. The Pennsylvania statute there held valid contained no escape for individuals whose religion required observance of a different Sabbath. Indeed, appellants there urged the very lack of a statutory alternative as a reason for invalidity, but Mr. Chief Justice

Warren, in an opinion announcing the judgment of the Court, though not a majority opinion, said, at 608:

"A number of States provide such an exemption, and this may well be the wiser solution to the problem. But our concern is not with the wisdom of legislation but with its constitutional limitation."

We find no compulsion in § 534H upon any individual to observe or not to observe Sunday, or any other day, as a Sabbath day. We find only a prohibition against the conduct of certain kinds of business on Sunday, or upon one alternative day which the individual involved in fact observes as his Sabbath. Beyond the basic prohibition, the statute ceases to be compulsory, and becomes permissive only.

Appellants argue that the very permission to observe an alternate Sabbath makes the entire statute invalid as to them because, being corporations, they are precluded from professing a faith which observes a different Sabbath. They could complain with equal force that, being corporations, they are denied the right to vote, to serve on juries, or to hold public office. They draw a fallacious inference from their corporate nature. As artificial, not natural, persons they have neither religion nor non-religion, in the free exercise of which the First Amendment protects individuals. They are, as the State must be, indeed neutral on the subject of religion.

We hold that § 534H neither impairs nor restricts any right guaranteed to the appellants by the Free Exercise Clause of the First Amendment.

## II

The contention that § 534H places the burden of proof in a criminal proceeding on the defendant is based on a mistaken premise. The statute permits two methods of enforcement, one civil and one criminal. The proceeding brought against appellants to enforce the law was civil, seeking no penalty for a past violation, but seeking only to enjoin any future violation. No criminal prosecution was instituted.

Even if the proceeding were to be looked upon as criminal in nature, the appellants here were respondents below, and the burden of proof was on the State, or the State's Attorney, not upon the appellants. They do not argue that the burden should have been one, rather than the other, of "preponderance of the evidence" or "beyond a reasonable doubt".

The only burden upon them, and properly so, whether the case was civil or criminal, would have been to show that they came within an exception in the statute. *Spurrier v. State,* 229 Md. 110, 182 A. 2d 358 (1962). In any event, the point is irrelevant in the present case, because all relevant facts were stipulated, and no burden of proof rested upon any party.

## III

Objections to § 534H that it is vague, or is arbitrarily indiscriminatory, or discriminatory, have been fully answered in *McGowan, supra,* and in *Rebe v. State's Attorney,* 262 Md. 350, 277 A. 2d 616 (1971), and require no further discussion.

*Order affirmed.*
*Appellants to pay costs.*